1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

KENNETH BEAMAN ,

Defendant.

CASE NO. 2:22-cr-00100-JHC

ORDER DENYING MOTION (DKT. # 77)

# I

## INTRODUCTION

This matter comes before the Court on self-represented Defendant Kenneth Beaman's

Motion to Reduce Sentence and for Compassionate Release.  Dkt. # 77; *see* 18 U.S.C. §

3582(c)(1)(A).  Mr. Beaman seeks a sentence reduction due to nodules found on his thyroid.  *See*

*generally* Dkt. 77.  Plaintiff the United States of America (the Government) opposes the motion.

Dkt. # 84.  Because Mr. Beaman has not presented "extraordinary and compelling"

circumstances to justify a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)(i), the Court

DENIES the motion.

ORDER DENYING MOTION (DKT. # 77) - 1

## II

### BACKGROUND

After Mr. Beaman pleaded guilty to one count of possession of a controlled substance with the intent to distribute and one count of unlawful possession of a firearm, the Court sentenced him to 60 months' incarceration with four years of supervised release to follow. Dkt. ## 45, 46. Following sentencing, the Court granted Mr. Beaman temporary release from the Federal Detention Center (FDC) Seatac to obtain medical care. *See* Dkt. ## 55, 58, 62, 64. Mr. Beaman then filed his first motion to reduce sentence, claiming that he had been diagnosed with "head and neck cancer for which the [Bureau of Prisons (BOP) was] providing no treatment whatsoever[.]" Dkt. # 65 at 1. The Government opposed the motion and submitted an affidavit from Mr. Beaman's oncologist who stated that, although Mr. Beaman's thyroid nodules were "of concern," they were "non-malignant (i.e., non-cancerous)," and instead required a follow-up ultrasound in approximately six months. Dkt # 71 at 2; Dkt. # 73 (sealed affidavit). In reply, Mr. Beaman sought leave to withdraw his motion. Dkt. # 74 at 1. The Court granted this request and dismissed the motion without prejudice, noting that Mr. Beaman "may file another such motion if circumstances change as to warrant the request." Dkt. # 75 at 1.

On March 22, 2024, Mr. Beaman, currently incarcerated at Federal Correctional Complex (FCC) Butner, filed the present motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). Dkt. # 77. The Government opposes. Dkt. # 84.

## II

### DISCUSSION

A.    Standards for a Reduction in Sentence

A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35. *United States v. Penna*,

315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United States*, 506 U.S. 817, 824–25 (2010).  The statute 18 U.S.C. Section 3582(c)(1), as amended by the First Step Act of 2018 (First Step Act), "allows certain inmates to seek a form of sentence modification," commonly referred to as compassionate release, "by filing motions to that effect with the district court."  *See United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022); *Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020).

Under Section 3582(c)(1), a court may reduce a sentence upon the defendant's motion if three conditions are met:  (1) the defendant has either exhausted all administrative rights to appeal the BOP's failure to bring such a motion on the defendant's behalf or has waited until 30 days after the warden of the defendant's facility has received such a request; (2) the defendant has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with "applicable policy statements" issued by the United States Sentencing Commission.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley*, 2020 WL 1819838, at *5.  If the defendant meets all three conditions, the court must consider the sentencing factors set forth in 18 U.S.C. Section 3553(a) in whether to grant compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).

As originally enacted, Section 3582(c)(1)(A) permitted only the BOP Director to file motions for a reduction in sentence based on extraordinary and compelling circumstances.  *See United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021) (per curiam).  That changed with the First Step Act, which amended to statute to allow defendants, in addition to the BOP Director, to file such motions on their own behalf.  *Id.*  Following the First Step Act, the Ninth Circuit held in *Aruda* that the Sentencing Commission's then-current policy statement—which limited "extraordinary and compelling reasons" to four categories—was not an "applicable policy statement" to defendant-filed motions because the policy statement pre-dated the amendment

ORDER DENYING MOTION (DKT. # 77) - 3

permitting defendant-filed motions.  *Id.* at 798, 800–01.  Accordingly, under *Aruda*, the district court had "discretion to consider a combination of 'any' factors particular to the case at hand" in determining whether extraordinary and compelling circumstances existed with respect to a defendant-filed motion, and district courts were not limited to the categories outlined in the policy statement.  *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (quoting *Aruda*, 993 F.3d at 802); *see also United States v. Van Cleave*, No. CR03-0247RSL, 2020 WL 2800769, at *5 (W.D. Wash. May 29, 2020) (referring to the policy statement as "persuasive, but not binding").

In April 2023, however, the Sentencing Commission proposed amendments to the policy statement, which were approved by Congress and took effect on November 1, 2023.  *See Sentencing Guidelines for United States Courts*, 88 Fed. Reg. 28254 (May 3, 2023) (expanding the categories of "extraordinary and compelling reasons" that support a reduction in sentence, among other changes); U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 (as amended).  Because the current policy statement post-dates the First Step Act, *Aruda* no longer controls, and the policy statement does.  *See Aruda*, 993 F.3d at 801-02; U.S.S.G. § 1B1.13.  The current policy statement limits "extraordinary and compelling reasons" to six categories: (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) if the defendant is a victim of abuse, (5) other reasons that are "similar in gravity" to the prior four categories, and (6) an unusually long sentence.  U.S.S.G. § 1B1.13(b)(1)-(6).  Thus, to obtain relief, the defendant must demonstrate that "extraordinary and compelling reasons," as defined by one of more of these six categories, to justify a reduction in sentence.  *Id.*  Finally, under the policy statement, the defendant must also show that they are "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  *Id.* § 1B1.13(a)(2).

B.      Exhaustion of Administrative Remedies

Before considering the merits of Mr. Beaman's motion, the Court must determine whether he has met the statutory exhaustion requirement for a reduction in sentence.  *See* 18 U.S.C. § 3582(c)(1)(A).  The Court may consider the motion only if the defendant has requested that the BOP make such a motion and either (1) the defendant has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) 30 days have elapsed since the "warden of the defendant's facility" received a compassionate-release request from the defendant.  18 U.S.C. § 3582(c)(1)(A).  The Ninth Circuit is clear "that § 3582(c)(1)(A)'s administrative exhaustion requirement is mandatory and must be enforced when properly raised by the government."  *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021).

The Court concludes that Mr. Beaman has exhausted his administrative remedies.  Mr. Beaman states that, on December 17, 2023, he filed his request for relief with the Warden, via his "unit manager," and did not receive a response.  Dkt. # 77 at 8–9.  The Government agrees that Mr. Beaman has satisfied this threshold requirement.  Dkt. # 84 at 4 n.2.

C.      Extraordinary and Compelling Circumstances

Mr. Beaman bears the burden of establishing that "extraordinary and compelling" circumstances warrant a reduction of his term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Suryan*, No. CR19-0082RAJ, 2021 WL 3510423, at *2 (W.D. Wash. Aug. 10, 2021); *see also* U.S.S.G. § 1B1.13(b)(1)–(6).  Mr. Beaman contends that he is entitled to a reduction in sentence because of: (1) his "head and neck" cancer diagnosis; (2) the BOP's lack of timely care of his health condition; and (3) the BOP's failure to properly test, diagnose, and treat him.  Dkt. # 77 at 9–14.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Government opposes, contending that while it "does not dispute the seriousness of either esophageal cancer or Mr. Beaman's health history, including his prior bouts of cancer, and understands Mr. Beaman's concern about getting timely diagnostic and other care for his thyroid nodules[,]" the relevant medical records, *see* Dkt. # 86 (sealed records), demonstrate that Mr. Beaman has not received such a diagnosis, BOP has responded adequately to Mr. Beaman's health concerns, and he has seen multiple specialists and undergone another ultrasound of his head and neck since transfer to FCC Butner. *See* Dkt. # 84 at 1.

The medical records confirm that since transfer to FCC Butner, Mr. Beaman has met with various specialists and undergone further radiological study. *See, e.g.*, Dkt. # 86 at 33, 189, 210, 219. The records also demonstrate that Mr. Beaman has also had various blood tests which do not indicate the presence of cancer. *See id.* at 161, 175, 185.

A defendant may present extraordinary and compelling reasons for a sentence reduction or release when they are (1) suffering from a terminal illness, such as metastatic solid-tumor cancer; (2) suffering from a medical condition that requires long-term or specialized medical care that is not being provided; or (3) at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease and such a risk cannot be mitigated in a timely manner. U.S.S.G. § 1B1.13(b)(1). The medical records do not show that Mr. Beaman has received a terminal illness diagnosis, nor has Mr. Beaman demonstrated that he is at risk of severe medical complications or death as a result of his incarceration. Indeed, the medical records also indicate that Mr. Beaman has had access to an ear nose and throat specialist and an endocrinologist, and has regularly seen his attending physician's assistant. *See generally* Dkt. # 86. Accordingly, and for the reasons set forth in the

ORDER DENYING MOTION (DKT. # 77) - 6

1

2

Government's opposition, *see* Dkt. # 84, the Court concludes that Mr. Beaman has not established "extraordinary and compelling reasons" justifying his release.[1]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Nevertheless, the Court is troubled that Mr. Beaman has struggled to access certain medical records from his previous medical treatment in Washington State, a lapse that appears to have delayed complete diagnosis and treatment of his thyroid nodules.  Specifically, the Court notes that Mr. Beaman's endocrinologist, Dr. Asif Rizvi, observed in his April 17, 2024 treatment notes that he had still not received a copy of the molecular testing report from a fine-needle aspiration (FNA) biopsy done in July 2023 in Tacoma, Washington.  *See* Dkt. # 86 at 34; *id.* at 2.  And the medical records demonstrate that this is not the first time that Dr. Rizvi has documented the absence of this molecular testing report; medical records from January 2, 2024, indicate that Dr. Rizvi's request for the report had been "pending for about two months[.]"  Dkt. # 86 at 194.  Recognizing that the lack of this molecular report may create significant gaps in Mr. Beaman's care, potentially affecting his diagnosis or the timely decision of whether Mr. Beaman should receive *another* FNA molecular test, the Court directs the Government to bring this order to the attention of the appropriate authorities, including the Warden at FCC Butner and the Warden at FDC Seatac,[2] as soon as possible to expedite the record transfer.

17

18

19

20

21

22

23

24

---

[1] Having determined that Mr. Beaman has not established "extraordinary and compelling reasons" to prompt his early release, the Court need not analyze whether a reduction in Mr. Beaman's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

[2] Mr. Beaman was incarcerated at FDC Seatac when he underwent FNA testing in July 2023.  *See* Dkt. ## 57, 58, 60, 62, 64.

ORDER DENYING MOTION (DKT. # 77) - 7

1

## III

### CONCLUSION

2

3      For the foregoing reasons, the Court DENIES Mr. Beaman's motion.  Dkt. # 57.  As

4   previously stated, *see* Dkt. # 75, Mr. Beaman may file another such motion if circumstances

5   change as to warrant the request.

6

7      Dated this 14th day of May, 2024.

8

9                                                      *John H. Chun*

10                                                   John H. Chun
                                                       United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING MOTION (DKT. # 77) - 8